224

CLARENCE DOLLAR,

*Plaintiff and Respondent*

vs.

LEO J. ALLSHOUSE,

*Defendant and Appellant.*

(No. 2778; May 21, 1957; 311 Pac. (2d) 395.)

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Elmer J. Scott of Worland, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief and also oral argument of J. T. Langdon of Worland, Wyoming.

Heard before Blume, C.J., and Harnsberger and Parker, J.J.

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

The action in this case was commenced on April 5, 1955. Plaintiff alleges that he entered into a contract

with defendant on November 18, 1954, a copy of which is attached to the petition; that under the terms of the contract the plaintiff delivered to defendant his sheep as mentioned in the contract and paid the defendant $3,000 for hay, beet tops, roughage, and pasturage and paid an additional five cents per head per day for ranging; that plaintiff has fully performed his part of the contract; that when the sheep were removed from defendant's premises there remained thereon 40 tons of hay at the value of $20 per ton; that the defendant now refuses to let the plaintiff take his hay despite the demands of plaintiff.

The contract mentioned in the petition is as follows:

"THIS AGREEMENT made and entered into this 18th day of November, 1954, by and between CLARENCE DOLLAR, hereinafter called DOLLAR, and LEO J. ALLSHOUSE, hereinafter called ALLSHOUSE, both of Washakie County, Wyoming, WITNESSETH:

"IT IS HEREBY mutually understood, agreed, and intended by and between ALLSHOUSE and DOLLAR that:

"1. Commencing on or about the 15th day of December, 1954, DOLLAR shall deliver about 1150 sheep (eleven hundred fifty) consisting of about 1120 ewes and about 30 lambs to the premises of ALLSHOUSE. Thereupon ALLSHOUSE shall immediately take charge of said sheep and shall, during the continuance hereof, care for, range, pasture, and feed all of said sheep in a good husbandlike manner; if at any time during the continuance hereof more than three (3) per cent of said sheep shall be ill or shall show signs of being in other than a normal healthy state, ALLSHOUSE shall immediately notify DOLLAR personally thereof; and should ALLSHOUSE at any time be

unable to properly care for said sheep he shall immediately notify DOLLAR of this fact.

"2. All veterinary expenses, every type medicine used and required, and all minerals and salt necessary during the continuance hereof shall be paid for by DOLLAR.

"3. All of said sheep shall be corralled each night during the continuance hereof.

"4. DOLLAR shall upon the execution hereof pay unto ALLSHOUSE the sum of Three Thousand Dollars ($3,000.00) in full payment for all hay, beet tops, roughage and pasturage on the premises presently occupied by ALLSHOUSE, together with the right to run said sheep thereon and use and feed same. It is the intention of the parties hereto to run said sheep on said premises for about ninety days. During the entire time said sheep are upon the said premises of ALLSHOUSE a calculation of five cents per head per day shall be made therefor; and if such calculation comes in excess of the said sum of $3,000.00 paid upon the execution hereof, then DOLLAR shall, upon the termination of this ranging and feeding period, pay unto ALLSHOUSE any sum due in excess of said Three Thousand Dollars, the said sum of $3,000.00 being applied against such calculation at five cents per head per day for the ranging, feeding and caring for said sheep by ALLSHOUSE. Should it be necessary to purchase more feed for the proper care and feeding of said sheep after that now on said premises is used, then ALLSHOUSE shall, at his own expense, furnish such feed, hay and pulp as is necessary and proper for the feeding of said sheep.

"5. ALLSHOUSE shall personally look after and care for said sheep; and ALLSHOUSE shall be liable to DOLLAR for any death losses caused to said sheep by the negligence of ALLSHOUSE in the feeding, ranging and caring for said sheep during the continuance hereof. It is expressly understood that ALLS-

HOUSE himself will at all times herd, shelter, water, and care for said sheep in a husbandlike manner.

"IN WITNESS WHEREOF, the parties hereto have hereunto set their hands this 18th day of November, 1954.

"/s/ Clarence Dollar

"/s/ Leo J. Allshouse"

A motion was filed by the defendant which was overruled and is not argued herein. Then the defendant filed a demurrer which was also overruled and it is argued herein that the demurrer should have been sustained. Thereafter defendant filed his answer and cross petition in which he admits the contract, the payment of $3,000 and that there remained on his premises at the time the sheep were removed therefrom 36 tons instead of 40 tons of hay. The defendant further alleges that the premises were leased from Earl T. Bower and that under the lease the defendant was not permitted to have any hay removed from the premises; that instead of using the hay which had been bought by plaintiff, defendant fed to the sheep 7 tons of his own hay valued at $20 per ton and now claims he should have credit for $140. By way of cross petition, defendant alleges that he fed, at plaintiff's request, certain pulp which he bought and transported for plaintiff and on this account the defendant should be allowed the sum of $592.04, together with interest thereon. Judgment was demanded by defendant on that account.

The court rendered judgment in favor of the plaintiff in the sum of $720 for 36 tons of hay remaining on defendant's premises at the rate of $20 per ton, less the sum of $140 credited the defendant for feeding 7

tons of his own hay to the sheep of plaintiff and less the sum of $24.90 for feeding beans to the sheep of plaintiff at the latter's request. The net judgment was for $555.10 and costs of the action. From this judgment, the defendant has appealed.

The case before us is a very simple case. It is not necessary, we think, to follow all the ramifications in the brief of appellant. The petition sets out that the plaintiff purchased all the hay of the defendant for the sum of $3,000.; that part of the hay purchased by plaintiff was not used by the appellant to carry out the contract entered into by the parties in feeding the sheep of plaintiff, and that the appellant refused to let the plaintiff have the hay which was unconsumed. The petition, while perhaps not a model of pleading, states, we think, a cause of action, and was not demurrable. While the cause of action arose out of a contract, it sounds in tort as counsel for appellant claims it should. Appellant refused to let the plaintiff have the hay remaining unconsumed. He converted it to his own use and was guilty of a tort.

The testimony shows that the plaintiff delivered 1137 ewes and 34 bucks to the appellant on December 15, 1954. The bucks remained on appellant's premises until January 15, 1955, and the ewes remained until March 15, 1955. For keeping these sheep and feeding them in a husbandlike manner, the appellant was to receive five cents per day per head. That, as the parties, figured, amounted to $5,177.95 which was paid, the last payment of $2,177.95 being made on March 15, 1955. The contract between the parties is very clear that the hay in question became the property of the plaintiff. The contract, it is true, is silent on the point as to what should become of the hay remaining unfed. But since the hay became the property of the plaintiff,

we can see no possible reason why appellant, after having been paid full compensation as provided in the contract, should retain the hay so remaining unfed and thus become unjustly enriched.

Counsel for appellant in his argument points out that the appellant leased his premises from Mr. Bower and that the lease provides that the hay should be consumed on the premises. Counsel argues that the plaintiff was chargeable with notice of this provision, and seems to deduce the conclusion that the hay which was not consumed should be the property of the appellant. We can find no justification for this conclusion, if for no other reason than that the record fails to show plaintiff's knowledge of the provisions of the lease, which defendant claims to be binding. Furthermore, assuming that the appellant was not authorized to permit the removal of the hay from the premises, nothing hindered him from paying the plaintiff the value thereof. Plaintiff testified that he would have been satisfied if such payment had been made. The record shows, as a matter of fact, that the appellant sold the hay to a third party and it was removed from the premises.

Counsel for appellant argues that the counterclaim for the pulp he purchased in the amount of $592.04 should have been allowed; that he might have used the hay instead of the pulp. He testified that the plaintiff asked him to get this pulp. That, however, was denied by the plaintiff and the court's finding on this conflicting testimony is binding upon us. The appellant undertook to take care of the sheep in a husbandlike manner. The testimony shows that while it is not absolutely necessary, it is highly proper that pulp or a similar produce be used in addition to hay. The contract provides that the appellant should purchase what-

ever additional pulp was necessary at his own expense, in order to properly carry out his part of the contract. We think appellant himself deemed it necessary to purchase that pulp and to do so at his own expense. The record is devoid of any indication that when the balance of the money due him was paid on March 15, 1955, he made any claim that the plaintiff should pay for the pulp. It is highly probable that the claim in this connection was an afterthought.

The court allowed the appellant the sum of $24.90 for beans purchased by the appellant. And counsel cannot understand that this allowance was made when the claim for pulp was disallowed. That matter is clear enough. The plaintiff testified that he asked the appellant to purchase these beans, and the court doubtless made the allowance for this amount on that account.

The contract in the case at bar provides that the plaintiff purchase *all* the hay on the appellant's premises. This was evidently a mistake. The appellant in fact reserved one stack of hay for his own benefit. During the time that plaintiff's sheep were in appellant's possession, the latter fed 7 tons of hay to the sheep by reason of the fact that because of inclement weather it was more convenient to use this hay rather than the hay owned by the plaintiff. As noted the court allowed the appellant $140 on this account.

After examining the record before us, we think that the trial court arrived at a just result, and its judgment must be and is affirmed.

Affirmed.